[No. 1653.]

FANNIE PAINTER, APPELLANT, *v.* EMMA KAISER,
RESPONDENT.

CONTRACT—CONSTRUCTION—INDIVIDUAL LIABILITY—RIGHT OF ACTION.
1. Where defendant, before she was appointed executrix of an estate,
   promised, for the purposes of an amicable settlement of all questions
   as to the probate and validity of a certain will, that she would, when
   appointed executrix, make certain payments to the heirs and distrib-
   utees of the decedent, she is bound individually by the agreement,
   when, as a result of the contract, she becomes executrix of the estate.
2. Where defendant entered into a contract whereby she promised, on
   becoming executrix of an estate, to make certain payments, one for
   whose benefit the contract was made and partly executed could
   maintain an action thereon against the defendant, though she was not
   one of the parties that signed the contract.

APPEAL from the District Court of the Second Judicial
District of the State of Nevada, Washoe County; *M. A.
Murphy*, Judge.

Action by Fannie Painter against Emma Kaiser. From a
judgment for defendant, plaintiff appeals. **Reversed.**

Statement of Facts, TALBOT, J.:

This is an appeal from an order sustaining a demurrer to
a complaint, entitled in the Second Judicial District Court,

against the defendant individually, and not as executrix, and containing the following allegations:

"That on the 5th day of November, 1901, the following agreement was made and entered into at Reno, Nevada, between plaintiff and defendant:

" [Title of the Estate.] Whereas Charles Kaiser, a resident of the town of Reno, Washoe county, Nevada, died at San Francisco, California, on the 18th day of October, 1901, leaving an instrument which purports to be his last will and testament; and whereas Mrs. Emma Kaiser, widow of said Charles Kaiser, did on the 24th day of October, 1901, file her petition in said court praying for the probate of said document as the last will and testament of said Charles Kaiser, deceased, and that she be appointed executrix thereof as provided in said document; and whereas Mrs. Mary Kent, daughter of said Charles Kaiser, deceased, residing in Churchill county, Nevada, and Mrs. Lillie Esden, daughter of said deceased, residing at Wadsworth, Washoe county, Nevada, have contemplated the filing of objections to the probate of 'said will; and whereas .it may be a question of uncertainty and litigation in the settlement of said estate as to how much of the property of said deceased was separate or community property and whether or not said will is the last will and testament of said deceased, lawfully executed;

"Now, therefore, in consideration of the premises and for the purpose of making an amicable settlement and adjustment of all differences which have or may arise between the parties hereto respecting the probate of said will and the distribution of said estate, and for the purpose of preventing and precluding litigation between the parties hereto respecting the probate of said will and the distribution of said estate, this agreement, made and entered into this 5th day of November, 1901, by and between Mrs. Emma Kaiser, widow of said Charles Kaiser, deceased, and Charles Kaiser, son of said deceased, both residing at Reno, Nevada, the parties of the first part, and the said Mrs. Mary Kent and the said Mrs. Lillie Esden, the parties of the second part, witnesseth:

"That, for and in consideration of the purposes aforesaid and the faithful performance of the covenants, promises and

agreements by the respective parties hereto, made and entered into, it is mutually covenanted, promised and agreed, as follows:

"First: That said parties of the second part do waive, relinquish and withdraw any and all objection, protest or contest to the admission and probate of said document, bearing date the 28th day of September, 1901, and heretofore filed in said court and cause, as the last will and testament of said Charles Kaiser, deceased, and do consent and agree that said document may be admitted to probate as the last will and testament of Charles Kaiser, deceased, and that said Mrs. Emma Kaiser be appointed executrix thereof.

"Second: That the said parties of the first part do hereby remise, release and quitclaim unto the said estate of Charles Kaiser, deceased, and to the parties named in said will as the legatees and distributees thereof, according to their respective shares as therein stated, all and singular their right, title and claim of, in or to the property and estate of said Charles Kaiser, deceased, of every kind and character and wheresoever situated as being community property.

"Third: It is mutually covenanted, promised and agreed by all the parties hereto, that all the property and estate of said Charles Kaiser, deceased, except the homestead hereinafter mentioned, is the separate property of said Charles Kaiser, deceased, and of said estate, and that the same and the whole thereof shall be inventoried, returned and distributed as the sole and separate property of said Charles Kaiser, deceased."

(The fourth and fifth sections provide for the setting apart of the homestead, the release of commissions, and the relinquishment of any claim for family allowance in excess of $1,600.)

"Sixth: That all of the parties hereto, for themselves, their heirs, executors, administrators and assigns, release, remise and forever quitclaim all their right, title, estate, and interest which they now do or hereafter may have, of, in or to said estate or any part thereof, save and except their right, title and interest therein as heirs and legatees of said Charles Kaiser, deceased, under and by virtue of said last will and testament, and do mutually covenant and agree that all and

singular the property and estate of said Charles Kaiser, deceased, except said homestead, of whatever kind and character, wherever situated, be administered, settled and distributed under and in accordance with said will, and not otherwise; that is to say, that there shall be set over and distributed to said Mrs. Emma Kaiser one-half thereof, to said Mrs. Mary Kent one-eighth thereof, to said Mrs. Lillie Esden one-eighth thereof, to said Charles Kaiser one-eighth thereof, and to Mrs. Fannie Painter one-eighth thereof."

(Section 7 provides for the payment of funeral expenses, the debts of the estate, and the cost of administration.)

"Eighth: It is further agreed that whenever, during the administration of said estate, and before the final distribution thereof, said executrix shall have in her possession money belonging to said estate, in excess of the sum of five thousand dollars ($5,000), that she will, upon request, pay to the said parties entitled thereto their respective share and proportion thereof, as above stated, without application to the court for an order for partial distribution, and that the parties to whom the same is paid, will execute and deliver to said executrix proper vouchers and receipts therefor.

"In witness whereof, the said parties hereto have hereunto set their hands and seals to this agreement, in duplicate, this fifth day of November, 1901.

> "Emma Kaiser.        [Seal.]
> "Charles Kaiser.      [Seal.]
> "Mrs. Mary Kent.      [Seal.]
> "Mrs. Lillie Esden.   [Seal.]"

"(2) That plaintiff was not present when said agreement was made, but had theretofore authorized her sisters, Mary Kent and Lillie Esden, to take whatever steps they were advised were necessary or proper to protect plaintiff's interests in said estate. That plaintiff was immediately informed of said agreement after it was executed and ratified, and approved the same, and elected to and did adopt the same, and claims the benefits thereof, and in consequence thereof received the payments thereunder from defendant as hereinafter stated.

"(3) That thereafter, and under and pursuant to said agreement, the said will of said Charles Kaiser was admitted

to probate, and said defendant was appointed, and still is, the executrix of the estate of Charles Kaiser, deceased. That due notice had been given to the creditors of said estate, and that all claims and debts against said estate have been paid. That no account of said executrix has been filed in said estate, and no petition or distribution thereof had by order of court.

"(4) And under and by virtue of said agreement, and without any application to or order of said court, said defendant paid to plaintiff, out of the moneys of said estate, the sum of $4,000 on January 15, 1902, and the further sum of $4,000 on July 11, 1902.

"(5) That on the 7th day of November, 1902, the defendant had in her possession and under her control, as executrix of said estate, and belonging to said estate, more than $47,000 in money; and, as plaintiff is informed and believes, the defendant still has said sum in her possession and under her control as aforesaid. [Here follows an allegation of demand.]

"(6) That on November 7, 1902, defendant had, and now has, at least $40,000 of the money of said estate, which should have been then distributed and paid to plaintiff and others, as provided in said agreement, and of which the plaintiff then was, and now is, entitled to have and receive the sum of five thousand dollars as her share and portion thereof, and said money is the separate property of plaintiff.

"(7) That ever since said November 7, 1902, said defendant has, and now does, fail, neglect, and refuse to pay plaintiff her share of said money, or any part thereof.

"Wherefore plaintiff prays judgment against defendant for the sum of five thousand dollars ($5,000), with interest thereon at 7 per cent per annum since November 7, 1902, and for costs of suit herein."

The demurrer, which was sustained, was taken on the grounds: First, that this complaint does not state facts sufficient to constitute a cause of action, secondly, that the plaintiff has no legal capacity to sue, because the complaint shows that the plaintiff is not a party to the contract, and for the further reason that she cannot bring suit against the executrix for any portion of her share of the estate before it

is distributed; and, thirdly, that there is a defect or mis-
joinder of parties defendant, because the complaint shows
that the defendant is the executrix of the estate of Charles
Kaiser, deceased.

*Cheney, Massey & Smith*, for Appellant:

I.   This action was sought to be maintained upon that cer-
tain written agreement set out in the complaint made on the
5th day of November, 1901, between respondent and appellant,
and which said complaint was demurred to on three ques-
tions:   First, the sufficiency of the facts stated to consti-
tute a cause of action; second, the legal capacity of the
plaintiff to sue as an heir of the estate for any portion or
share of the estate before the same is distributed, and, third,
whether or not the suit could be maintained against Mrs.
Kaiser as executrix of the estate of Charles Kaiser, deceased.

II.   It will be observed that the contract set out in this
complaint was made before letters testamentary were issued
to the respondent.   The contract was made with Mrs. Emma
Kaiser as the widow of Charles Kaiser, deceased, individu-
ally.   It was founded upon a valuable consideration.   Con-
test of the probate of the will which gave to the respondent
one-half of the estate was waived, and the will was admitted
to probate under the agreement.   She further was benefited
by the agreement in obtaining under the will one-half of the
separate property of Charles Kaiser, deceased.   The demurrer
admits all these facts.   The will was probated.   Respondent ·
was appointed executrix.   She paid out under the terms of
the agreement a large amount of money to this party under
the terms of the agreement.   The demurrer admits these facts
to be true.   That the court may not misapprehend the char-
acter of this suit, we desire to emphasize the fact that it was
not instituted against Emma Kaiser as executrix of the estate
of Charles Kaiser, deceased, but was instituted against her
individually upon an individual liability under a contract
made by her individually, and before she could have con-
tracted in any respect as the executrix of the estate of Charles
Kaiser, deceased.   Keeping these main facts in view, we con-
tend that the court erred in sustaining the respondent's
demurrer.   Moreover, it may be seriously doubted as a prop-

osition of law, whether an action could be maintained against
Emma Kaiser as executrix of the estate of Charles Kaiser,
deceased, upon a contract made when she was the executrix,
that would establish any liability whatever against the estate
of Charles Kaiser, deceased.   The general rule of law dedu-
cible from all the authorities upon this subject is that an
estate is not answerable for the contracts of its executor or
administrator, and that no action at law can be sustained
against him, as such, on account of any contract made after
the death of the testate, but only such contracts as are exe-
cuted in the discharge of his duties of office, and within the
scope of his authority, may be maintained against him for
the purpose of binding the estate.   Stating the rule in other
words, upon a contract made by an executor it is the general
rule of law that the executor is personally liable.   Hence it
was not necessary to have sued Mrs. Kaiser as executrix
upon the contracts set out in the complaint, and had such
suit been instituted a demurrer for misjoinder of parties
would have been properly sustained.   This rule of law is
announced in the case of *Schlicker* v. *Hemenway*, 110 Cal.
579; 52 Am. St. Rep. 116.

III.   The general rule is, in actions against executors or
administrators, as follows:   First, that for all causes of action
arising upon a contract made by the testate or intestate in
his lifetime an action can be sustained against the executor
or administrator as such, and, second, that in all causes of
action where the same arise upon contract made after the
death of a testator or intestate the claim is against the
executor or administrator personally, and not against the
estate.   (*Ferrin* v. *Myrick*, 41 N. Y. 322; *Austin* v. *Munro*,
47 N. Y. 366; *Waldsmith* v. *Waldsmith*, 2 Ohio, 160.)   The
liability in this action was the liability of the respondent
individually.   Under the rule cited there could be no liability
upon her part under this contract as executrix.   If she is not
liable individually, then the contract is of no force or effect,
notwithstanding it is founded upon a valuable consideration
and is indisputably shown to have been in part executed.
Also, under the rule stated, she could not have bound the
estate of Charles Kaiser, deceased.

*Curler & King*, for Respondent.

By the Court, TALBOT, J:

The two matters for our determination are whether the defendant is liable individually on a contract made by her personally, and before her appointment as executrix, by which she agreed that after her appointment she would, without any decree of distribution, pay to the plaintiff, and the other legatees named in the will, the amount of their respective proportions of any money which might come into her hands in excess of $5,000; and, if she is so responsible, the question arises, secondly, whether the plaintiff in this action can recover on the contract set out in the complaint, when she was not one of the parties that signed it, because it was for her benefit, and was accepted and partly executed between her and the defendant. If the action were against the respondent as executrix, there would be force in the contention of her counsel that she had no authority to enter into a contract binding the estate, that money could not be taken out of the estate to meet such an agreement, and that the statute relating to distribution must be followed; but the suit is not brought, and no relief is asked, against the defendant in her representative capacity, nor against the estate, nor under the statute; and, as the personal judgment sought and execution thereon could not affect or reach the money or property of the estate, the matter for consideration is not confined to the broad proposition, as urged in the demurrer, whether an heir or legatee can bring suit against the executrix for any portion of her share of the estate before distribution is ordered, but whether she is bound individually by her contract when she promises, for valuable considerations yielded to her, to perform some act pertaining to the management of the estate, such as the payment of money owing or to become due from the estate to heirs or others.

We see no reason why she could not bind herself to make such payment before the decreeing of distribution by the court, or contemporaneously with or at any time after the execution of her contract, and even regardless of her appointment or acting as executrix. The promise to pay when the money came into her hands was as binding as any timely condition which fixed in advance an exact date when payment should be made, instead of naming this contingency.

If, to meet the personal obligation which she incurred by the execution of the contract, she uses the money belonging to the estate, she takes the risk of not having the same allowed to these legatees finally by the court; and if other devisees or heirs appear who are entitled to the money, or a part of it, she and her bondsmen will be liable to them, and it is not apparent that the enforcement of her promise will work any injury to the estate. After receiving the benefits which the agreement provided for her, she should not be allowed to repudiate that part of it which is advantageous to the others interested.

Beginning early in the common law, the rule has long prevailed, and the authorities are numerous and in harmony—those in the United States following the English cases—to the effect that administrators and executors become personally liable on their promises made under circumstances similar to those existing here, although they cannot so bind the estate. Ordinarily, they must do many acts and make many contracts for which they are liable personally, and for which they are entitled to be reimbursed ultimately on the presentation and allowance of their accounts by the probate court. The rule is well stated by the Supreme Court of Ohio in *Waldsmith's Heirs* v. *Administrators of Waldsmith*, 2 Ohio, 160: "If the action is founded on a promise made by the testator or intestate in his life, the defendant must be sued in his representative character; he may plead *plene administravit*, and the judgment must be *de bonis testatoris;* but, if the plaintiff rely on a promise by the executor after the death of the testator, it is not necessary to name the defendant as executor, yet this may be done; they may be named as administrators by way of description, or for the purpose of showing the circumstances of the transaction and the origin of the liability; but the defendants cannot plead *plene administravit*, and the judgment should be *de bonis propriis.* * * * If the declaration presents a claim to which the defendant is liable in his representative capacity only, as on an obligation executed by the testator, he must be sued as executor, and the judgment must be *de bonis testatoris;* but, if it present a demand which originated from the acts of the defendant in his capacity of executor, but for which he has

become individually liable, as if he should settle a debt due from the estate and give his own note in the character of executor, he may be described in the writ and declaration as executor, or that description may be omitted, and in either case the judgment would be *de bonis propriis.*"

In *Austin* v. *Munro*, 47 N. Y. 360, it was said: "The rule must be regarded as well settled that the contracts of executors, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, as for services rendered, goods or property sold and delivered, or other consideration moving between the promisee and the executors as promisors, are the personal contracts of the executors, and do not bind the estate, notwithstanding the services rendered, or goods or property furnished, or other consideration moving from the promisee, are such that the executors could properly have paid for the same from the assets, and be allowed for the expenditure in the settlement of their accounts. The principle is that an executor may disburse and use the funds of the estate for purposes authorized by law, but may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator. (*Ferrin* v. *Myrick*, 41 N. Y. 315; *Reynolds* v. *Reynolds*, 3 Wend. 244; *Demott* v. *Field*, 7 Cow. 58; *Myer* v. *Cole*, 12 Johns. 349.) The rule is too well established to be questioned or disregarded, and all departure from it would be mischievous."

In *Luscomb* v. *Ballard*, 5 Gray, 403, 66 Am. Dec. 375, the Supreme Court of Massachusetts said: "The law is that by a promise, the consideration of which arises after the death of the testator or intestate, the estate cannot be charged, but the executor or administrator is personally liable on his contract. And whether the amount is to be repaid from the estate is a question for the court of probate in the settlement." Upon a demurrer in *Holderbaugh* v. *Turpin*, 75 Ind. 84, 39 Am. Rep. 124, it was held that, where a complaint charges the execution of a contract by an administrator in his individual capacity, it binds him individually, although it relates to matters connected with the estate; and that, where he enters into a contract upon a consideration accruing subsequent to the death of the decedent, it is deemed his indi-

vidual contract. This doctrine has been applied, and has bound the executor or administrator personally, for work done or goods sold to one as executor (*Corner* v. *Shew*, 3 Mel. & W. 350; *Myer* v. *Cole*, 12 Johns. 349; *Davis* v. *French*, 20 Me. 21, 37 Am. Dec. 36; *Sumner* v. *Williams*, 8 Mass. 162, 5 Am. Dec. 83); for funeral expenses which he has ordered or ratified (*Corner* v. *Shew, supra; Brice* v. *Wilson,* 8 Ad. & El. 349); where he indorses a promissory note of the deceased (*Rex* v. *Thom*, 1 Term R. 489; *Curtis* v. *Bank*, 7 Har. & J. 25); or if he makes a note and signs it as executor (*Dunne* v. *Deery*, 40 Iowa, 251; *Forster* v. *Fuller*, 6 Mass. 58, 4 Am. Dec. 87; *Woods* v. *Ridley*, 27 Miss. 119; *Germania Bank* v. *Michaud* [Minn.] 65 N. W. 70, 30 L. R. A. 286, 54 Am. St. Rep. 653); where he submits a disputed question to arbitration without express limitation of his liability (*Riddell* v. *Sutton*, 5 Bing. 200); where a judgment states that it was rendered against him as administrator, if the facts or record show personal liability (*Rich* v. *Sowles* [Vt.] 23 Atl. 723, 15 L. R. A. 850); and under the same rule, and more directly, executors have been held personally liable for the payment of legacies, upon their agreement or implied promise to pay the same (*Davis* v. *Reyner*, 2 Lev. 3; *Evans* v. *Foster* [Wis.] 50 N. W. 410, 14 L. R. A. 117).

In *Perry* v. *Cunningham*, 40 Ark. 185, the acceptance by an administrator of an order drawn on him by a creditor of the estate, conditioned to pay "as soon as accruing rents of the estate would permit," rendered him personally liable upon receipt of the rents. An executor becomes bound personally upon his promise to pay the debt of the testator in consideration that the creditor will forbear for a time to press his claim. (Bishop on Contracts (enlarged ed.) sec. 1252; 1 Story on Contracts (5th ed.) sec. 361, and the cases there cited.) These principles are also reiterated in 1 Bishop on Contracts (8th ed.) 128, and in the elaborate note mentioned in the brief (52 Am. Dec., beginning at page 118).

The objection that the plaintiff cannot maintain the suit because she was not a signatory to the contract is untenable under *Miliani* v. *Tognini*, 19 Nev. 134, 7 Pac. 279, and under the decisions cited there and in 9 Cyc. pp. 377–382. In that case this court said: "The precise question presented is this:

Can a plaintiff maintain an action on a simple contract to
which he is not a party, upon which he was not consulted,
and to which he did not assent, when it contains a provision
for his benefit?   Besides the statute which provides that
'every action shall be prosecuted in the name of the real
party in interest,' this court has held in three different cases
that the beneficiary named in such a contract may maintain
an action thereon in his own name."

The order and judgment sustaining the demurrer and dis-
missing the action are reversed, and the case is remanded
with direction to the district court to fix a time within which
the defendant will be allowed to answer.

BELKNAP, C. J., and FITZGERALD, J., concur.