CALVIN D. HEMPHILL, AND RALPH B. REYNOLDS, CO-PARTNERS, DOING BUSINESS AS PEERLESS MEAT CO., APPELLANTS, v. FRANK E. HANSON, RESPONDENT.

No. 4399

November 16, 1961                    366 P.2d 92

*Leslie E. Riggins,* of Reno, for Appellants.

*Ernest S. Brown* and *Jack I. McAuliffe,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Frank E. Hanson and members of his family are the owners of what is known as the Village Shopping Center in Reno, comprising a number of shops and stores, including the restaurant premises involved in this appeal. In April 1958 one Donald R. Conway went into possession of the restaurant premises pursuant to negotiations between him and Hanson for a 5-year lease thereon, and Conway commenced the operation of a restaurant business under the name of Conway's Village Restaurant and as Conway's Fine Foods. Bills for supplies accrued against Conway, one of which was appellants' bill for meat, and this action was commenced by appellants for a judgment against Conway for the accrued meat bill of $556.10 and against Hanson on

his written agreement to pay same. Judgment went against Conway for this sum and for costs and an attorney fee of $350. Such judgment remained unsatisfied. Relief against Hanson was denied. Appellants appeal from that part of the judgment denying them any relief against Hanson. Conway is not a party to this appeal.

The parties have stipulated that the only issues involved in the appeal are (1) whether there was sufficient consideration for Hanson's written agreement to pay the account of appellants, and (2) whether a certain sale of "the business" by Conway to Hanson was within the operation of the bulk sales law, resulting in a good cause of action by appellants against Hanson. Under the stipulation if we find affirmatively on either of these issues, a reversal of the judgment denying relief to appellants must follow. As we have concluded that there was sufficient consideration for Conway's agreement to pay appellants' bill, we do not consider the second issue.

The facts are established by an agreed statement of the case and by Hanson's written agreement. It becomes necessary to quote at length from these two instruments. The parties are referred to by their abbreviated names. The instrument on which the present action is based reads in material part as follows:

"Agreement of Consideration (Personal Damage).

August 30, 1959

"I, Frank E. Hanson, do as of this date (August 30, 1959) take possession of the business known as Conway's Village Restaurant or Conway's Fine Foods, (they both being the same) located at 1113 California Ave. Reno. in the Village Shopping Center.

"In accordance with the notice sent to Mr. Donald R. Conway by regestered mail August 18, 1959. Mr. Conway is surrendering the business and location of said restaurant, for this consideration, (which I have agreed), that I, Frank E. Hanson do accept and assume all debts and liens against the Business known as Conway's Fine Foods, it being the same as above, so far as the same, was used for the business (to which there is no doubt) But They being made on or before this date

August 30, 1959. But shall exclude such debts as Federal Old Age, Income Tax, Unemployment, N.I.C. and Sales Tax.

"Personal property such as machinery, and it's contracts shall be trainsfered to Mr. John Ami, and the balance thereof paid in full, with agreed consideration paid to Mr. Conway by Mr. Ami. and the machinery then being the personal property of Mr. John Ami.

"The agreed total dollars, of the existing debts or liens shall not exceed the amount of $5,325.00 which will enclude the closeing bill of Sierra Power Co. and the total of debts ($5,185.70) as shown on a list of creditors, which has been attached to, and made a part of this agreement.

"This agreement is being made with Mr. Conway in lieu of approximately $6,325.00 he would have received from Mr. John Ami, or any other buyer, should I have delivered the 5 year lease to Mr. Conway as promised 4/28/58, and of My own free will and accord have accepted this agreement, and will assume the debts or liens and pay in full.

"For this consideration and agreement, I Have this day August 30, 1959 recieved from Donald R. Conway, Two sets of keys belonging to the restaurant for which I have in hand paid Mr. Conway $1.00 (one dollar)." This is followed by a list of some 14 keys to different parts of the premises, and attached is a list of the accounts referred to, which list includes the item of the appellants' account of $556.10 and an item of $1,600 rental, payable from Conway to Hanson.

It is the consideration for this agreement that is in question on this appeal.

The agreed statement of facts recites, first, the two issues involved as above noted and proceeds as follows:

"During the period from July 28, 1959 to August 14, 1959 Plaintiffs [appellants] sold and delivered to the Defendant Donald R. Conway, doing business as Conway's Village Restaurant certain meat products for the sum of $556.00, and said Defendant is now indebted to Plaintiffs for said sum of $556.00.

"Plaintiffs are third party beneficiaries[1] in that certain Agreement dated August 30, 1959, signed by the Defendant Frank E. Hanson, and are entitled to recover from the Defendant Frank E. Hanson, if there was consideration for said Agreement * * *.

"Sometime prior to June 1, 1958, [Hanson] and [Conway] negotiated for a lease under the terms of which Conway leased from Hanson the restaurant premises at 1113 California Avenue, in Reno, Nevada, for a term of five years, for a rental of $200.00 per month, or a percentage of 5% on the gross sales, whichever amount was greater. Pursuant to said negotiations, Conway took possession of the premises and commenced the operation of a restaurant business under the name of Conway's Village Restaurant, and later as Conway's Fine Foods, and Hanson instructed his attorney Ernest S. Brown, Esq., to prepare a written lease. A lease dated the _____ day of July, 19[58], was prepared by said attorney, and was executed by * * * Hanson * * * but it was not delivered to Conway and the first time it was seen by Conway, was on May 26, 1960, the first day of the trial of this case, when Hanson produced it, in response to a subpoena duces tecum * * *. Hanson admitted signing said lease in May or June, 1959.

"The rent of $200.00 per month provided for in the aforesaid lease, was paid by Conway to March 1, 1959 and thereafter Conway did not pay the monthly rent. Jack Hanson, the son of the Defendant Frank E. Hanson, refunded to Conway the rent paid by Conway for the months of January and February, 1959, because of slow business during the winter months and the delay of Hanson in delivering the lease promised to Conway. * * * Furthermore, Hanson said he agreed to waive any accrued rent. * * *

"Conway negotiated with the Defendant John Amicucci for the sale of his restaurant business during the latter part of July or early part of August, 1959, and

---

[1]In any event, the right of a third party beneficiary, not a party to the contract, to maintain an action against the promissor is established law in this state. Acoustics, Inc. v. American Surety Co., 74 Nev. 6, 320 P.2d 626.

a sale of the business for the sum of $8,000.00, including the unexpired term of said five-year lease, was agreed upon. Conway informed Hanson of the sale he was making to John Amicucci and demanded delivery of the lease which has been agreed upon and also asked Hanson to approve an assignment of the lease to John Amicucci. Conway stated that he couldn't sell the business without a lease, and he lost approximately $6,480.00 as a result of not getting the lease and the loss of his sale of the business to John Amicucci.

"During the month of August, 1959, and the negotiations between Conway and John Amicucci for sale of the restaurant business, and the negotiations between Hanson and Conway for delivery of the lease and the approval of an assignment of the lease to John Amicucci, Conway conferred with Edwin C. Mulcahy, an attorney at law, in Reno, to determine what could be done to obtain the lease, and following the conference Conway told Hanson he had no alternative but to sue for the lease * * *.

"Hanson mailed to Conway on August 17, 1959, a purported Notice to terminate Conway's tenancy and Conway admitted receiving the Notice on August 19, 19[59]. * * * Upon receipt of said [notice] Conway said he again conferred with his attorney and that he contemplated taking action to stay in the restaurant premises and sue Hanson for the lease on the premises, and that he also talked with Hanson on August 20, 19[59], and informed him of the action he intended to take against him.

"Hanson, prior to mailing to Conway, the purported notice to terminate Conway's tenancy, * * * and during Conway's negotiations with John Amicucci for the sale of said restaurant business, entered into a lease with John Ami, who is one and the same person as John Amicucci, and received from him a deposit in the sum of $500.00, under the terms of which, the said restaurant premises were leased by Hanson, and others to John Ami for a term of five years commencing September 1, 1959, and ending September 1, 1964, for a rental of $250.00 per month, or 5% of gross sales, whichever

is greater. * * * Hanson believed the lease he gave to John Amicucci would produce more than the minimum rental of $250.00 per month because of the 5% clause. He also thought John Amicucci could produce more business than Conway had produced.

"Conway operated said restaurant until the end of the business hours on Saturday, August 29, 1959 and Hanson and Conway met in said restaurant on Sunday morning August 30, 1959 and took inventory of the restaurant equipment leased by Hanson to Conway * * *. After taking the inventory Hanson signed the agreement dated August 30, 1959 * * * and at that time Conway gave to Hanson the keys and possession of the restaurant premises.

"On August 31, 1959 as a result of prior negotiations, Conway concluded a sale of the food inventory and some restaurant equipment to John Amicucci, for the sum of $1,542.00. Thereafter on September 2, 1959, he caused to be mailed to all his creditors the letter dated September 2, 1959, informing the creditors of the agreement between Hanson and himself * * *.

"Hanson has not offered to return to Conway any consideration which may have inured to him as a result of the aforesaid Agreement dated August 30, 1959 * * *.

"Hanson was not pleased with the way Conway conducted the restaurant business.

"* * *

"Dated this 5th day of January, 1961."

The foregoing agreed statement of the case was signed by counsel for the respective parties and approved by the trial judge.

Under such situation the trial court found that Hanson signed the agreement of August 30, 1959 "whereby he purportedly assumed and agreed to pay in full certain debts as shown on a list of [Conway's] creditors * * * attached to and made a part of said agreement * * *." The court found however that such document "is not enforceable in this action and against the said Frank E. Hanson as being without any consideration * * *. That said Donald R. Conway had surrendered possession of said premises by reason of his

default in the payment of rent from January to August, [1959] and there was no surrender of possession or of the business in consideration of Frank E. Hanson assuming any debts of the said Conway's business." Accordingly the court concluded that plaintiffs take nothing as against Hanson.

In our opinion the agreed statement of facts and the facts as admitted in Hanson's written agreement to pay the bill in question, and as supported by the court's finding that he actually executed such contract, are in direct variance with and in contradiction of the court's finding that the contract was not supported by any consideration. The only support for the court's determination that there was no consideration lies in sundry paragraphs of the 14-page typewritten lease from Hanson to Conway strictly defining and limiting Conway's rights. But such lease signed, it is true, by Hanson and his co-owners, was retained by him and never delivered to Conway, who never saw the instrument until the trial was in progress. The minds of the parties had never met on the terms of the written lease relied upon by the trial court and relied upon by the respondent on this appeal. The only lease agreed upon by the parties was the oral lease and it was "for the term of 5 years, for a rental of $200.00 per month, or a percentage of 5% on the gross sales, whichever amount was greater."[2]

Possession was taken pursuant to this oral lease. Conway paid the rental from April 1958 to March 1959. Hanson refunded the January and February rents because of slow business during the winter and the delay of Hanson in delivering the lease promised to Conway. Hanson agreed to waive any accrued rent. One of Conway's specified indebtednesses assumed by Hanson was accrued rent in the sum of $1,600. Under these circumstances the court's holding that the consideration of Hanson's agreement to pay the bills was Conway's surrender of the premises because of his default in payment of rent, something that he was already obligated by law to do, is without support in

---

[2] No question is raised in this appeal as to the applicability of the statute of frauds.

the record. The record in fact is directly to the contrary. Hanson said over his signature: "This agreement is being made with Mr. Conway in lieu of approximately $6,325.00 he would have received from Mr. John Ami, or any other buyer, should I have delivered the 5 year lease to Mr. Conway as promised 4/28/58, and of my own free will and accord have accepted this agreement, and will assume the debts or liens and pay in full." Conway was in possession under his oral lease. He had been contemplating legal action to enforce that possession. He surrendered it in consideration of Hanson's promise to pay his bills. Under the agreement Conway transferred the machinery and equipment to Ami. The surrender having been consummated August 30, 1959, Hanson was enabled to deliver possession to Ami on September 1, 1959 in accordance with his agreement with Ami. Under the Hanson-Ami lease Hanson received a deposit of $500 and a 5-year lease at $250 a month rental as against the $200 monthly rental under the Conway lease—$3,000 increase for the 5-year term. Hanson was relieved of possible extensive and costly litigation with Conway or Ami, or both of them. The detriment to Conway was admitted by Hanson to be a loss of Conway's $6,325 sale to Ami. The benefits to Hanson were manifest. It is clear that such benefits to him from Conway's surrender of possession were most evident to him when he signed his contract. The surrender of possession that seemed to him an ample consideration at the time is now asserted to be no consideration at all, because forsooth Conway was said to be legally bound to deliver such possession by reason of the terms of the written lease that Conway had never seen.

Surrender of possession under the circumstances recited formed ample consideration for the contract. Childress v. Lucky Jew Lead & Zinc Co., 134 Kan. 743, 8 P.2d 376, 378. There the court referred to a set of facts less complicated and less conclusive than those in the present case. The court remarked: "Of such stuff are lawsuits made. We pass on problems like that every

month. * * * Considerations like this have been held to support contracts in this state. [Citing cases.]" In Rogers Development Co. v. Southern California R. E. Inv. Co., 159 Cal. 735, 115 P. 934, 935, 35 L.R.A. (N.S.) 543, the court said, citing numerous California authorities: "There is no merit in the claim that the contract was without consideration. The defendant was in possession of the greater part of the land, holding under the agreements aforesaid. In consequence of this contract of plaintiff to repurchase, defendant gave the possession to plaintiff, and it has ever since retained possession of all the lands. The yielding of possession constituted a sufficient consideration for the contract." See also Hewitt v. Novak, 117 Mont. 365, 158 P.2d 627.

We are entirely satisfied that there was consideration for Hanson's agreement to pay Conway's indebtedness to the appellants. The judgment denying relief to appellants must accordingly be reversed with costs in this court, and the case remanded to the district court with instructions to enter judgment in favor of appellants and against respondent in the sum of $556.10, together with interest and costs in the district court and together with a reasonable attorney fee to appellants.

Reversed and remanded.

McNAMEE and THOMPSON, JJ., concur.