L. QUIJADA, Appellant, v. SOUTHERN PIPE & CASING COMPANY, a Division of U. S. INDUSTRIES, INC., a Delaware Corporation, Respondent.

No. 4452

May 21, 1962                                     371 P.2d 661

*Charles E. Catt*, of Las Vegas, for Appellant.

*Ralph L. Denton* and *George F. Ogilvie, Jr.*, both of Las Vegas, for Respondent.

# OPINION

By the Court, BADT, C. J.:

This appeal presents for our determination (1) the construction of a certain written agreement, contained in escrow instructions, signed by appellant and others; (2) the legality of such agreement; (3) its operation as affecting the rights of a third-party beneficiary; (4) the application of the doctrine of promissory estoppel as affecting appellant's liability thereunder; and (5) certain rulings of the trial court asserted to be erroneous

and prejudicial. The parties will be referred to by their abbreviated names.

The action was originally brought by Southern Pipe & Casing Company against Pure Water Company, Pioneer Title Insurance and Trust Company, Michael Hines, and L. Quijada. Judgment was entered in favor of Southern Pipe against Hines, Quijada and Pure Water for $6,028.20 and interest, and for the payment by Pioneer Title to Southern Pipe of sums held by it in escrow.[1] Quijada alone appealed from the judgment, to the end that the only parties involved in this appeal are Quijada as appellant and Southern Pipe as respondent.

The facts may be best presented by quoting the findings of the trial court, in which we have abbreviated the names of the parties without designation of the changes.

"5.   On or about the 15th day of August, 1956, pursuant to an oral contract made in California between the plaintiff and the defendants Pure Water and Hines, the plaintiff sold and delivered by common carrier to the defendant Pure Water and Hines, jointly, 7400 feet of six-inch diameter asphalt-dipped steel pipe of the reasonable and agreed value of $6,028.20. Said sum was due and payable on the 15th day of September, 1956.

"6.   Prior to and at the time of the sale of pipe by plaintiff as aforesaid:

"(a) Quijada was the owner and developer of a housing subdivision located in or near the City of Las Vegas, County of Clark, State of Nevada, which was and now is known as the Park Ridge Tract;

"(b) Pure Water was a public utility duly licensed by the State of Nevada and had previously secured from the Public Service Commission of the State of Nevada a Certificate of Public Convenience for the furnishing of domestic water to the said Park Ridge Tract;

"(c) The Water Well System of the defendant Pure Water Company which had previously supplied water to said tract had become inadequate because of water contamination from the wells owned by said Pure Water Company;

[1]Pioneer Title sought only a judicial declaration as to who was entitled to distribution of these funds.

"(d) The Park Ridge Tract was without an adequate water supply because of said contamination;

"(e) Water was being supplied to the residents of said tract by means of tank trucks;

"(f) Because of the above-described water situation, the Federal Housing Administration had refused to permit the release of funds held by Palomar Mortgage Company to Quijada, to which he would otherwise have been entitled by reason of the sale of houses in said tract pending the installation of a suitable water system thereto.

"(g) That prior to the sale of such pipe as aforesaid, the Public Service Commission * * * conducted an informal investigative hearing into the affairs of Pure Water and had ordered said Pure Water to take immediate steps to provide adequate water service to the Park Ridge Tract.

"7.   Prior to the sale of pipe by plaintiff as aforesaid and in order to provide for an adequate water system for said Park Ridge Tract, Quijada, Hines, and Pure Water and J. Fisher entered into an agreement for the purpose of financing the installation of an adequate water system for Park Ridge Tract. Under the terms of said agreement, Quijada agreed to pay one-half of the cost of such water system, and Hines and Pure Water and J. Fisher had agreed to pay the other half; the cost of said system exceeded $12,000.00. Hines and J. Fisher have fully performed all things required of them by said agreement.

"8.   Pursuant to the agreement described in Paragraph 7, Quijada on or about the 21st day of June, 1956, entered into a further agreement with the Palomar Mortgage Company, mortgage holder on certain of the lots on the Park Ridge Tract, wherein Quijada agreed to, and thereafter did, open an escrow with the defendant Pioneer Title, being Escrow No. LV3979–2, wherein it was provided that Quijada would deposit in said escrow with the Pioneer Title a sum sufficient to pay one-half of the costs of the water system to be constructed to serve Park Ridge Tract as aforesaid. Thereafter, Quijada did deposit a sum in excess of $7,234.50

in such escrow; Pioneer Title still holds such sum; all bills by persons furnishing materials for the construction of such water system were, under the terms of said Escrow Agreement, to be jointly approved by J. Fisher and Quijada; Quijada has arbitrarily and wrongfully failed and refused and still fails and refuses to approve the payment of such bills, even though the same have been approved for payment by J. Fisher; in particular, Quijada has failed and refused and still fails and refuses to approve the payment of the bill due to the plaintiff on account of the purchase price for the steel pipe in the amount of $6,028.20. It was further understood and agreed by and between Quijada and Hines and J. Fisher that the sums of money to be advanced by Quijada for the payment of one-half of the price of a new water system to serve at Park Ridge Tract would constitute a loan by Quijada to Pure Water.

"9.   It was expressly intended by the parties to the agreements described in paragraph 7 and 8 above that persons such as plaintiff who supplied materials for use in said water system would be benefited thereby.

"10.   Prior to the sale and delivery of the pipe by plaintiff as aforesaid, Quijada orally stated and represented to the plaintiff that it would be paid for all pipe which it sold to the defendants Pure Water and Hines from funds which he had then deposited into the escrow referred to hereinabove, or which he would thereafter deposit or cause to be deposited into said escrow. Had it not been for such statement and representation by Quijada, the plaintiff would not have sold said pipe to the defendants Hines and Pure Water.

"11.   Neither the plaintiff nor any of its agents, servants or employees made any guarantees, representations or warranties, express or implied, as part of said sale, except that the pipe would, and it did, conform to the description contained in said contract, as above stated; neither the plaintiff nor any of its agents, servants or employees made any guarantee, representation, or warranty regarding the length of time said pipe would last or as to its life.

"12.   Said pipe when sold and delivered by plaintiff

complied with the description contained in the order placed by the defendants Pure Water Company and Hines;

\* \* \* \* \*

"14. Shortly after August 15, 1956, said pipe was installed as part of the Park Ridge Tract water system by said J. Fisher under the direction and supervision of Hines and Pure Water and with the knowledge and consent of Quijada. Said pipe was negligently and carelessly installed so as to cause the joints to be improperly driven together and so as to cause the asphalt coating thereof to become broken, chipped, and cracked, all of which facilitated corrosion of said pipe and proximately contributed to the leaks which subsequently developed therein, as described below."

The court did not include in its findings the wording of the escrow instructions that constituted the contract signed by Quijada for release of the funds from escrow to pay the bills. Such contract, signed by Quijada and executed by Palomar Mortgage Company, contained the following initial paragraph:

"The undersigned hereby instruct you to close your above numbered escrow, and you are further instructed that from the loan proceeds in your hands you are to hold said funds for the purpose of a loan to the Pure Water Company, Inc., a Nevada corporation from L. Quijada for the purpose of providing an adequate water supply to Park Ridge Tract No. 1. It is further understood that in the disbursing of said funds that the disbursement shall be to the Pure Water Company, Inc., and Contractor, sub-contractors or materialmen jointly for the payment of bills incurred by Pure Water Company, Inc., in the installation of the necessary facilities to make water available for residents of Park Ridge Tract No. 1. The bills presented for payment are to be jointly approved by Jay Fischer and L. Quijada. It being understood that L. Quijada is agreeing to loan one-half (½) of the funds necessary to install the necessary facilities to make water available to residents of this tract. The additional one-half (½) of funds are to be provided by Pure Water Company, Inc."

The escrow instructions contained nothing further material to this appeal other than the usual provision that in the event of controversy the title company might await the judgment of a court concerning the disbursement of funds.

The court concluded that Southern Pipe was a third-party beneficiary of the agreement; that Quijada "having led the plaintiff to believe that it would be paid at full purchase price for such pipe from the funds in escrow as a result of his contract" with Palomar and Hines and Pure Water "is now estopped to deny such promise"; that plaintiff was entitled to judgment against Hines, Quijada, and Pure Water, jointly and severally, for $6,028.20, plus interest, at 7 percent from September 15, 1956; and that Pioneer Title should be ordered and directed to remit to Southern Pipe the sums held in escrow not to exceed the amount of the judgment. It entered judgment accordingly.

The theory of appellant is evidenced by its motion to strike and amend the findings and conclusions. It moved to strike all the significant portions of paragraph 8 quoted above, which fixed Quijada's liability under the written escrow instructions, and to insert in place thereof a finding that such escrow agreement was "preparatory to the concluding of an agreement in terms and collateral" between Quijada, Hines, Fisher, and Pure Water, which, however, was never agreed upon, and that there was no legal consideration to Quijada for any legal binding obligation to Palomar Mortgage. It moved to strike all of finding No. 9 and to strike all of finding No. 10, and to insert in place thereof a finding that Quijada had made none of the representations found in paragraph 10. Numerous other provisions of the court's findings, 10 in all, were asked to be stricken. Such motion to strike followed the theory of Quijada's answer to the complaint and his special defenses thereto, and upon the theory, contrary to the court's decision and findings, that Quijada's denials and special defenses had been proved by Quijada. Such are the same points raised by Quijada on this appeal. They amount to the contention that the findings are not supported by the evidence. The

same contentions were made in support of his motion to strike from the conclusions those parts thereof concluding that Southern Pipe was a third-party beneficiary of the agreement and that Quijada was estopped from denying his promise to Southern Pipe by the fact that it had led Southern Pipe to believe that if it shipped the pipe it would be paid in full out of the funds held in escrow.

(1) The agreement is in no manner lacking in clarity and precision. It contains no indication that it was tentative only and collateral to some other unidentified and unmentioned agreement. Under the court's findings one of the third-party beneficiaries would be the party furnishing the pipe essential to the housing project. The funds were in escrow for that purpose. That the fund would thus become a loan from Quijada to Pure Water, repayable by the latter to the former was simply an additional incident of the transaction.

(2) Appellant contends that the enforcement of the written agreement is barred by the statute of frauds, "because all parties to this action are strangers to it." But Quijada was not a stranger to it; he signed it. Even if it constituted an agreement to answer for the debt of Pure Water for the purchase price of the pipe, it was "in writing, and subscribed by the party charged therewith." It thus complied with the statute. NRS 111.220.

(3) Quijada next contends that, as the money held in escrow was money due him from Palomar Mortgage Company and as he owed nothing to Southern Pipe or Pure Water, there was "no legal consideration to support a third-party beneficiary contract" in favor of Southern Pipe, or Pure Water, or Hines. However, the obtaining of water was essential to Quijada's tract. It was essential to his compliance with his contract to supply water to the respective purchasers of land and homes therein. It was essential to his compliance with the orders of the

Public Utilities Commission. It was essential to Quijada's right to the funds deposited in escrow by Palomar Mortgage. Pure Water was insolvent. The consideration was ample for the support of a third-party beneficiary contract. See Hemphill v. Hanson, 77 Nev. 432 (1961), 366 P.2d 92.

(4) Appellant contends (a point not raised in Hemphill v. Hanson, supra) that lack of privity forecloses Southern Pipe's right to sue on the contract. Appellant relies on Ferris v. Carson Water Co., 16 Nev. 44 (1881), as disposing adversely of the beneficiary's right to sue. In that case Ferris sued Carson Water Co. under his assertion that he was a beneficiary under the defendant's contract with Carson City to supply it and its inhabitants with water for the extinguishment of fires. A fire occurred in premises adjoining the premises of Ferris and the insufficiency of the water pressure permitted the fire to be communicated to the plaintiff's building and to destroy it. This court denied relief on the ground of lack of privity, citing as authority Vrooman v. Turner, 69 N.Y. 280 (1877). For a complete discussion of Vrooman v. Turner, how and why the rule was pronounced in that case, the development of the law, and the subsequent virtual abandonment of the rule, see 4 Corbin, Contracts, secs. 806 and 827. The status of the rule in Nevada, however, is clear. In Miliani v. Tognini, 19 Nev. 133, 7 P. 279, this court answered in the affirmative the question: "Can a plaintiff maintain an action on a simple contract to which he is not a party upon which he was not consulted, and to which he did not assent, when it contains a provision for his benefit?" The same was held in Painter v. Kaiser, 27 Nev. 421, 76 P. 747, 750, 65 L.R.A. 672, 675, and in Acoustics, Inc. v. American Surety Company, 74 Nev. 6, 320 P.2d 626, where, citing Painter v. Kaiser, supra, and Miliani v. Tognini, supra, this court said: "Where a contract contains a promise for the benefit of one not a party to the contract, the third party beneficiary has a direct right of action against the prom-

isor."[2] We are compelled to reject as the present law in this state any language used in Ferris v. Carson Water Co., supra, contrary to the holdings of this court last above cited. The assignment of error that Southern Pipe could not sue Quijada for lack of privity is without merit.

(5) Error is assigned in the trial court's application of promissory estoppel. We find no error. It is provided in NRS 52.060: "The following presumptions, and no others, are deemed conclusive: * * * 3. Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it." Quijada went to Azusa, California, made contact with the representatives of Southern Pipe and made arrangements for the purchase of the pipe. Southern Pipe's controller and credit manager insisted on knowing how the pipe would be paid for. In response Quijada produced a copy of the escrow instructions and said: "Here, this is the way your money will be given to you through escrow, it will be paid out of escrow." Southern Pipe's credit manager made a copy of the contract, verified the fact that the money was on deposit in escrow by communicating with the escrow holder and accordingly made the shipment. We agree with the trial court's conclusion that Quijada was estopped from denying his promise to Southern Pipe.

[Headnote 6]

(6) Much of appellant's briefs would appear to find support in his own testimony. From this he concludes that the findings are not supported by the evidence. The most that can be said of this is that the evidence is conflicting, in which case we cannot interfere with the trial

---

[2]In Hemphill v. Hanson, 77 Nev. 432, 366 P.2d 92, we said in a footnote: "In any event, the right of a third party beneficiary, not a party to the contract, to maintain an action against the promisor is established law in this state. Acoustics, Inc. v. American Surety Co., 74 Nev. 6, 320 P.2d 626."

In Force v. Peccole, 77 Nev. 143, 360 P.2d 362, the rights of a third-party beneficiary to sue under a written agreement were presented to this court, but we refused to consider the question because it had not been raised in the trial court.

court's acceptance of the testimony of the respondent's witnesses. The record contains ample evidence to support the findings.

(7) We have considered other assignments of error made by appellant which, in our opinion, are without merit and do not require discussion.

The judgment is affirmed.

MCNAMEE and THOMPSON, JJ., concur.