DEAN V. OLSON, Appellant, *v.* LOUIS IACOMETTI AND SYBIL M. IACOMETTI, Respondents.

No. 7237

April 16, 1975                    533 P.2d 1360

*Echeverria & Osborne,* and *Arthur T. Nicholls,* of Reno, for Appellant.

*Stewart & Horton,* of Reno, for Respondents.

## OPINION

By the Court, BATJER, J.:

In 1965, appellant Dean V. Olson purchased certain property at Lake Tahoe from Logan Creek Estates, Inc. He made a down payment of $56,500 and gave Logan Creek a note for

the balance secured by a first deed of trust on the property. The down payment was part of $60,000 borrowed from respondents, evidenced by a note for $69,000, and secured by a second deed of trust on the realty purchased from Logan Creek.

Appellant was unable to meet payments on either note. Pursuant to the terms of the Olson-Iacometti note, upon default by appellant, First Title Insurance Company was to record title to the real property in the respondents, which it did.[1] On October 13, 1965, the respondents filed suit against Olson, Logan Creek and Nevada Title Guaranty Company[2] to quiet title to the subject realty. Process was not served on appellant and the action lay dormant for some time.

On June 6, 1966, Nevada Title, trustee under the Olson-Logan Creek deed of trust, filed a notice of default and election to sell, declaring the principal of $168,750, plus interest, immediately due and payable. On June 15, 1966, prior to the foreclosure sale, Logan Creek and respondents entered into an agreement whereby respondents agreed to purchase for valuable consideration, all right, title and interest in appellant's note and deed of trust held by Logan Creek. Notice of default and election to sell having already been given by Nevada Title, Logan Creek proceeded on September 29, 1966, pursuant to the Iacometti-Logan Creek agreement, with the foreclosure of the deed of trust. At the foreclosure sale respondents submitted the only bid and purchased the property for $155,733.03.

On November 27, 1967, the respondents filed an amended complaint in the action originally commenced on October 13, 1965 (case number 224372), this time naming Dean V. Olson as the sole defendant, abandoning the quiet title theory and seeking only the money due to them on the Olson-Iacometti note. The case was set for trial on December 18, 1970. However, pursuant to stipulation filed by the parties, the trial setting was ordered vacated on October 8, 1970, and was not reset.

Prior to the date of execution of the above mentioned stipulation, respondents had filed a motion for summary judgment. The district court granted the motion and on November 17, 1970, entered summary judgment for the respondents in the

---

[1]The note provided in part that: "This note is secured by the title to certain Real property in Douglas County, Nevada, which title shall be held in First Title Insurance Company with instructions in event of default in the payment of this Note, that the aforesaid title company shall upon instructions, record title to the payees hereof."

[2]In August of 1965, a document had been executed substituting Nevada Title Guaranty Co. for First Title Insurance Co., which, however, was not recorded until June of 1966.

amount of $60,000, together with interest, costs and attorney fees. Appellant filed a notice of appeal, but that appeal was dismissed because it was taken from a judgment in a different case. Appellant's subsequent motion to amend and vacate that summary judgment was denied.

On December 21, 1970, appellant filed a complaint against respondents collaterally attacking the judgment entered against appellant on the Olson-Iacometti note as well as moving to set aside the foreclosure of the Olson-Logan Creek deed of trust. Appellant alleged, inter alia, extrinsic fraud in the former action. The district court, finding no extrinsic fraud or remaining issue of fact, granted respondents' motion for summary judgment and this appeal ensued.

Appellant contends that the facts construed most favorably toward him show that the first summary judgment entered in favor of the respondents on November 17, 1970, was obtained by the type of fraud that would support a collateral attack and that the district court erred in granting respondents' motion for summary judgment on the ground that no genuine issue of material fact remained to be tried.

1. Appellant claims that the respondents concealed from him the Iacometti-Logan Creek agreement pertaining to the foreclosure sale, and as a result he was prevented from raising certain defenses, evidenced by that agreement, in respondents' action against him on the Olson-Iacometti note. Those theoretical defenses include breach of contract in which appellant was the third-party beneficiary, a conspiracy to defraud him by securing an unjustified deficiency judgment from him, and the execution of said agreement effecting a discharge of his debt to respondents.

The subject of the Iacometti-Logan Creek agreement was the Olson-Logan Creek note and deed of trust. Appellant's debt to respondents was not part of the subject matter. The clause in the agreement referring to a minimum bid[3] at the impending foreclosure sale in no way affected appellant's debt to respondents. Regardless of the amount bid upon foreclosure of the Olson-Logan Creek trust deed, respondents could still sue on

---

[3]The agreement of July 15, 1966, between respondents and Logan Creek Estates, Inc., reads in pertinent part: "4. At said foreclosure proceedings and upon sale of the real property and personal property pursuant thereto, the parties hereto shall jointly bid for said property, personal property and improvements, a sum equal to the combined amounts due and owing on the first and second Deeds of Trust herein referred to, and/or Chattel Mortgage."

the Olson-Iacometti note. Foreclosure of the first trust deed extinguished only the security for the Olson-Iacometti note, not the indebtedness represented by that note. See Sims v. Grubb, 75 Nev. 173, 336 P.2d 759 (1959).

If, as he claims, appellant was a third-party beneficiary under the Iacometti-Logan Creek agreement, his only right would have been to net proceeds of the sale after all amounts owed by him to Logan Creek had been paid in full by the trustee. His purported third-party claim under the agreement did not arise out of the Olson-Iacometti note upon which respondents brought their action, and is not in the nature of a compulsory counterclaim which would have been required to be stated pursuant to NRCP 13(a). Before summary judgment on the Olson-Iacometti note was entered, appellant's purported third-party claim could have been filed as a permissive counterclaim (NRCP 13(b)). Now his third-party claim has been alleged in his complaint filed on December 21, 1971, and dismissed on December 21, 1972, through the judgment from which this appeal has been taken.

Appellant's spurious claim as a third-party beneficiary under the Iacometti-Logan Creek agreement was properly dismissed. He cannot enforce on his behalf the Iacometti-Logan Creek agreement unless it appears that the agreement was made for his benefit. The fact that he might incidentally benefit by the performance of the agreement is insufficient.

At best appellant was an incidental beneficiary rather than a third-party intended beneficiary. There is nothing in the Iacometti-Logan Creek agreement indicating that either party intended to confer any rights on appellant as a gift, and furthermore, he was not a creditor, but instead a debtor to both parties.

It became appellant's burden in opposition to respondents' motion for summary judgment to show that the parties to the Iacometti-Logan Creek agreement executed it with the intent to benefit him. He has completely failed to show any such intent. Cf. Johnson Farm Equipment Co. v. Cook, 230 F.2d 119 (8th Cir. 1956); U.S. v. Carpenter, 113 F.Supp. 327 (D.C. N.Y. 1949). Furthermore he has neglected to cite any authority to support a third-party beneficiary claim.

Although a plaintiff can maintain an action on a simple contract to which he is not a party, upon which he was not consulted, and to which he did not assent, when it contains a

provision for his benefit (Quijada v. So. Pipe & Casing, 78 Nev. 271, 371 P.2d 661 (1962); Acoustics, Inc. v. Amer. Surety, 74 Nev. 6, 320 P.2d 626 (1956); Painter v. Kaiser, 27 Nev. 421, 76 P. 747 (1904); Miliani v. Tognini, 19 Nev. 133, 7 P. 279 (1885)), he must prove that there was an intent to benefit him.. "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must at least show that it was for his direct benefit." Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 307 (1927). See Corbin on Contracts, § 779c (1951); Restatement of Contracts, § 133(1)(a)(b)(c) (1932).

Appellant's claim of extrinsic fraud does not go to the validity of the Olson-Iacometti note or to any circumstances surrounding his default in the payment of that note. The gravamen of his theory of fraud is respondents' concealment of the Iacometti-Logan Creek agreement during the prosecution of their action on the Olson-Iacometti note. Since the agreement was irrelevant to that action it cannot be properly urged that its concealment could possibly have precluded any defenses available to appellant. Thus, there was no cognizable cause of action for extrinsic fraud before the lower court. Compare Villalon v. Bowen, 70 Nev. 456, 273 P.2d 409 (1954).

"Rule 56 [NRCP 56] authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial. . . ." Nevada Land & Mtge. v. Hidden Wells, 83 Nev. 501, 506, 435 P.2d 198, 201 (1967). In deciding the propriety of a summary judgment, all evidence favorable to the party against whom such judgment was rendered will be accepted as true. Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963). Supporting affidavits, notice of foreclosure and sale, depositions of respondents, and pleadings, as well as the allegedly concealed Iacometti-Logan Creek agreement were all before the district court when it entered its judgment in this case. Viewing them in a light most favorable to appellant, the district court committed no error in rendering summary judgment in favor of respondents.

2. Appellant next claims that respondents' counsel violated a stipulation and order vacating the trial setting, and the trial

court erred in entering summary judgment against him on that issue. That stipulation, it is contended, required respondents' motion for summary judgment to be held in abeyance to allow appellant more time to discover the agreement which is now a part of the record in this case. An examination of the stipulation reveals only the respondents' request. Appellant gained only an order vacating trial setting pursuant to the stipulation. There was never a written stipulation consenting that the motion for summary judgment be stricken or postponed. A stipulation will not be considered by the district court unless in writing. DCR 24. Here the district court committed no error in ordering summary judgment for respondents on the evidence available to it on this issue.[4] *Nevada Land & Mtge.,* supra.

3. Appellant further contends that respondents conspired with Logan Creek Estates, Inc., and Kenneth Amundson and Margaret Amundson, its president and secretary, to bid at the Olson-Logan Creek trust deed foreclosure sale an amount less than the true value of the property, and less than the amount agreed upon in the Iacometti-Logan Creek agreement. This allegation should have been raised in the action on the Olson-Iacometti note and, not having been raised there, it was properly precluded in this second suit. A valid judgment for a plaintiff is conclusive not only as to defenses adjudicated, but also to those which might have been raised, and such defenses cannot be used by the former defendant as the basis of a subsequent action against the former plaintiff. Cf. Wolford v. Wolford, 65 Nev. 710, 200 P.2d 988 (1948); Weisheyer v. Weisheyer, 54 Nev. 76, 6 P.2d 439 (1932). On this point the district court properly applied the bar of res judicata. Cf. Tomiyasu v. Golden, 81 Nev. 140, 400 P.2d 415 (1965), cert. denied 382 U.S. 844 (1965).

4. Appellant's claim of discharge is a phantasy. If the Iacometti-Logan Creek agreement is read in a light most favorable to him, it would never have entitled him to a discharge on his note to respondents. As we have above indicated, the very most he could be entitled to would be net proceeds of sale after the Olson-Logan Creek obligation had been fully satisfied. The district court had the Iacometti-Logan Creek agreement before

---

[4]The lower court ruled that appellant could have pursued the issue by way of his NRCP 60(b) motion to vacate. This ruling was erroneous, since 60(b) excepts independent actions alleging fraud upon the court.

it when it dismissed appellant's claim of discharge, and in dismissing it no error was committed.

The summary judgment appealed from is affirmed.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.