NORMAN W. LIPSHIE, APPELLANT, *v.* TRACY INVESTMENT COMPANY, a NEVADA CORPORATION, RESPONDENT.

No. 8678

July 1, 1977                                   566 P.2d 819

*Smith and O'Brien,* and *Richard A. Avila,* Las Vegas, for Appellant.

*Lionel Sawyer & Collins,* and *Stephen L. Morris,* Las Vegas, for Respondent.

**OPINION**

By the Court, MANOUKIAN, J.:

This appeal is taken from an order of the District Court granting summary judgment in favor of Respondent, Tracy Investment Company, against Appellant, Norman W. Lipshie, plaintiff below. This action was commenced by Lipshie to recover the amount of $127,780.00, less third party payments, on a promissory note executed by Bonanza No. 2, a Nevada corporation doing business as the Bonanza Hotel and Casino, and personally endorsed by Lawrence Paul Wolf. Summary judgment was granted in favor of Appellant against Bonanza No. 2 on March 26, 1971. Wolf died in 1971, and thereafter Lipshie twice amended his complaint to substitute Wolf's estate, as well as to include Respondent Tracy as a defendant, pleading additional theories of recovery. A cross-complaint was filed

by Wolf against co-defendant Tracy. Thereafter, motions for summary judgment were proffered by Tracy against both the initial complainant and the cross-complainant, which the trial court granted on the ground that "no genuine issue as to any material fact had been established by Lipshie or Wolf regarding Tracy's liability to either Lipshie or Wolf." We are concerned solely with the grant of summary judgment against Appellant Lipshie.

Appellant has raised the following issues for our determination: (1) Whether Tracy Investment Company, under the alter ego doctrine, should be held liable to Lipshie for the debt owed him by Bonanza No. 2? If the former is answered in the negative, whether Tracy was unjustly enriched so as to allow quasi-contractual recovery by Lipshie? (2) Whether Lipshie can be regarded as a third party beneficiary of the October 28, 1968, agreement between Wolf and Tracy? (3) Whether Tracy is liable to Lipshie for representations purportedly made by Wolf as its agent? Review of these questions prompts us to conclude that the trial court was correct in so entering summary judgment in favor of Tracy Investment Company, and, accordingly, for the reasons hereinafter expressed, we affirm.

In 1966, Lipshie purchased 178.43 shares of Bonanza Hotel and Casino stock for $79,305.00 and concurrently loaned to Bonanza $79,305.00. Thereafter, he loaned to Bonanza an additional $177,780.00, each loan evidenced by unsecured promissory notes.

Soon experiencing financial difficulties, Bonanza filed a Petition for Arrangement under Chapter XI of the Bankruptcy Act in the United States District Court, Las Vegas, Nevada. In March, 1968, Appellant timely filed a creditor's proof of claim in the amount of $272,652.40 in the Bonanza Bankruptcy proceedings.

Wolf, the then president and majority stockholder of Bonanza, proceeded to attract funding for a plan of arrangement, and in June, 1968, entered into negotiations with Dal-Tex Corp., and others, to fund Bonanza's plan of arrangement. In summary, Dal-Tex Corp. preliminarily agreed to fund the plan and settle with Bonanza's creditors in exchange for the stock and assets of Bonanza. Lipshie, being aware of Dal-Tex Corp.'s intentions, insisted through Wolf that his interest as a creditor be recognized before he would assign his stock to Bonanza. Appellant ultimately assigned his stock to "Bonanza No. 2, or nominee."

On October 17, 1968, a memorandum of discussion was executed by Wolf and a Dal-Tex Corp. representative setting

forth the basic understanding of the parties' plan of arrangement. The obligation owed Lipshie was referred to in paragraph 6 of the memorandum.

> 6. New corporation to assume the so-called Lipshie loan (Lipshie and Wolf) of $290,000.00 and the so-called Ling and Howard loan in an amount ranging from $131,000.00 up to $158,000.00. Both of said loans shall be retired in 60 equal monthly installments commencing two years after closing.

Prior to the execution of any formal documents of agreement with Dal-Tex Corp., and it appears without the knowledge of Appellant, Wolf entered into negotiations with Tracy, whereby Tracy succeeded by assignment to all of the rights and interests of the prospective purchaser, Dal-Tex Corp. The Tracy-Wolf agreement, executed October 28, 1968, contained the following provisions relative to Lipshie.

> III(a): *The indebtedness of Bonanza No. 2 to* Norman Lipshie and Lawrence Paul Wolf in the principal amount of $290,000.00 *shall survive* the Chapter XI proceeding of Bonanza No. 2 and shall be retired as hereinafter provided.

> III(c): *The obligation of Bonanza No. 2* in the sum of $290,000.00 to Lipshie and Wolf shall be paid in 84 equal monthly installments commencing thirty (30) days following the close of the escrow herein provided and there shall be no interest payable on said obligation. [Emphasis added.]

The October 28, 1968, agreement acknowledged the preexisting agreement between Wolf (Bonanza) and Dal-Tex Corp.

Pursuant to the agreement, Wolf was advanced money to aid him in securing the assignments of stock and releases of loan claims held by the various Bonanza stockholders. Further, Tracy advanced the sum of $100,000.00 to Wolf ". . . to be used by Wolf by way of down payment outside of escrow to obtain the said assignments and releases of loan claims from the shareholders. . . ." It was further provided that Wolf's application of such sum would be subject to the "general supervision" of a Tracy representative.

Wolf then approached Lipshie in order to obtain the assignment of stock, together with the withdrawal of Lipshie's claim in bankruptcy. Lipshie agreed to this under the following conditions: the payment of $64,000.00 for his stock and the coincident loan of $79,305.00; a $50,000.00 down payment against

the second loan by Lipshie in the sum of $177,780.00, and a promissory note for the $127,780.00 balance on said loan. Tracy through and outside of escrow, indirectly provided funds for the acquisition or payment of the following: Lipshie's Bonanza stock, the payment of his original $79,305.00 loan to Bonanza, and the $50,000.00 in partial satisfaction of his $177,780.00 loan to Bonanza.

Following Lipshie's compliance with the agreement, Bonanza, through its president, executed a note dated December 2, 1968, in the amount of $127,780.00 to be paid to Lipshie in 84 monthly installments. Prior to December 2, 1968, and following the releases by the several stockholders, Bonanza's plan of arrangement was approved by the Federal District Court.

Tracy assumed management and control of Bonanza's assets on or about November 26, 1968; the officers of Tracy were essentially the same officers of Bonanza; the officers of Tracy were the directors of Bonanza; Kirk Kerkorian was the sole stockholder of Tracy, chairman of the board and director of Tracy, and chairman of the board and director of Bonanza; the principal place of business and resident agent for Tracy and Bonanza were the same; while owned by Tracy, Bonanza was never a going concern; Bonanza's primary source of funds were those provided by Tracy, including operating capital, and within approximately 60 days of or prior to the closing of the Bonanza-Tracy escrow on December 2, 1968, Tracy sold the Bonanza properties, including all of the outstanding stock, for a substantial profit, including an assumption by the purchaser of the Lipshie obligation in the sum of $127,780.00.

Thereafter, following a breach by the purchasers, Tracy served them and Bonanza with a Notice of Default and Election to Sell under Deed of Trust. The Deed of Trust was foreclosed upon, and on July 29, 1970, the trustee conveyed Bonanza's real and personal property to another corporation.

In deciding the propriety of the summary judgment, we must review the evidence most favorable to the party against whom summary judgment was granted and give that party the benefit of all favorable inferences that may be drawn from the subsidiary facts. Ottenheimer v. Real Estate Division, 91 Nev. 338, 535 P.2d 1284 (1975); Brewer v. Annett, 86 Nev. 700, 475 P.2d 607 (1970); Old West Enterprises v. Reno Escrow Co., 86 Nev. 727, 476 P.2d 1 (1970). Summary judgment is appropriate only when it is quite clear what the truth is, and that no genuine issue remains for trial. Perry v. Byrd, 87 Nev. 431, 488 P.2d 550 (1971); Short v. Hotel Riviera, Inc., 79

Nev. 94, 378 P.2d 979 (1963). After reviewing the record and viewing the evidence most favorable to Appellant, we find no material issues of fact to be resolved. Summary judgment on all issues was appropriate. NRCP 56(c).

1. *Alter Ego Doctrine:* It is Appellant's position that the Bonanza Corporation was an instrumentality used by Tracy Investment Company to obstruct payment of the debt owing Appellant. Essentially, as stated by Appellant, "the factual basis of liability rests in the manner by which Tracy, its officers and directors, and sole shareholder systematically used the Bonanza and other corporate screens to ultimately deprive Lipshie of his stock interest in the Bonanza Corporation and monies due under the subject promissory note."[1]

The requirements for applying the alter ego doctrine are set forth in McCleary Cattle Co. v. Sewell, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957).

> (1) The corporation must be influenced and governed by the person asserted to be its alter ego. (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or *promote injustice.* [Emphasis added.]

A cursory review of the facts would cause us to erroneously conclude that the first two requirements are satisfied by virtue of the interlocking nature of the officers and directors of the two corporations, Tracy Investment Company and Bonanza No. 2. There is no showing, however, that Tracy and Bonanza have been other than valid, separate, and independent corporate entities. Appellant's reliance on Chatterly v. Omnico, Inc., 485 P.2d 667 (Utah 1971), is misplaced. In that case, it was the parent corporation which was doing business, not the subsidiary. The parent corporation's board of directors controlled the subsidiary in every respect. The subsidiary neither kept nor maintained minutes, books, or other general corporate records of its own, and the parent corporation's board of directors voted on and approved or disapproved the subsidiary's business activities. The Utah Court was justified in its finding of sufficient evidence on the alter ego issue. Appellant also cites to the Court, Houston Oil Field Material Company v. Stuard,

---

[1]Appellant's opening brief, p. 2.

406 F.2d 1052 (5th Cir. 1969). That case involved a factual setting of influence or dominance, unity of interest and ownership, and injustice, even more aggravated than the case of Chatterly, supra, and is equally misplaced. Appellant has failed to bring to our attention evidence that would warrant a like conclusion. He presents little more than the fact that Tracy owned all shares of Bonanza and that the officers of Tracy and Bonanza were identical. This, without more, is insufficient. *See* H. Henn, Corporations, §148 (2nd ed. 1970).

Likewise, the third requirement has not been met. There is no evidence that a fraud or deception would be sanctioned. Specifically, the injustice that would purportedly result from the adherence to the fiction of separate entities is, from Appellant's point of view, that Bonanza was wrongfully made the debtor on the new application to reimburse Lipshie, it *now* being Lipshie's understanding that Tracy was to be the party responsible for payment of the $127,780.00 installment note. It must be noted that the promissory note for the remaining $127,780.00 was executed December 7, 1968, and that it was not until May 7, 1970, that the initial complaint against Bonanza was filed. The amended complaint which joined Tracy was not filed until August 3, 1972. It is not reasonable to conclude that Tracy undercapitalized Bonanza in order to frustrate the payment of its obligation, because the default which led to the commencement of this action occurred subsequent to Tracy's having divested itself of the Bonanza stock. The chronology belies this present claim by Appellant that Tracy was to be the intended obligor on the note.

In North Arlington Med. v. Sanchez, 86 Nev. 515, 522, 471 P.2d 240, 244 (1970), we stated:

> Undercapitalization, where it is clearly shown, is an important factor in determining whether the doctrine of alter ego should be applied. However, in the absence of fraud or injustice to the aggrieved party, it is not an absolute ground for disregarding a corporate entity.

There is nothing at bar showing that the Bonanza was undercapitalized, following the bankruptcy rearrangement, and preceding Tracy's sale of the Bonanza and all of its assets.

Nor is there any evidence to indicate that any protest or objection was made by Appellant that Bonanza was the maker of the agreement and promissory note.

It is clear that from the outset it was Tracy's intent to have the obligation owed by Bonanza to continue exclusively as

Bonanza's indebtedness. The October 28, 1968, agreement speaks specifically of the "indebtedness of Bonanza No. 2" in that it "shall survive" as the "obligation of Bonanza No. 2." It is not reasonable to conclude that Tracy, through Bonanza, assumed the Lipshie obligation. The fact of Tracy's "custom" or "practice" of having third parties assume responsibility for such indebtedness, considered in light of its non-assumption of the Lipshie obligation, provides further support to Tracy's argument that it intended to avoid liability. This becomes especially apparent when reviewing the other provisions of the October 28, 1968, agreement, wherein Tracy expressly assumed responsibility for several other creditor claims.

As contended by Tracy, Appellant received "exactly what he bargained for." In consideration for his withdrawal of the claim in bankruptcy, he received a sum certain in settlement of the purchase of his stock and concurrent loan and $50,000.00, together with a promissory note for $127,780.00 executed by Bonanza and endorsed by Wolf, in settlement of his extraordinary loan. It cannot be said that the circumstances present here rise to that level of "injustice" sufficient to avoid summary judgment. *See,* North Arlington Med. v. Sanchez, 86 Nev. 515, 471 P.2d 240 (1970) (insufficient evidence to support finding of alter ego); Baer v. Amos J. Walker, Inc., 85 Nev. 219, 452 P.2d 916 (1969) (insufficient evidence to support finding of alter ego). *Cf.* Carson Meadows, Inc. v. Pease, 91 Nev. 187, 533 P.2d 458 (1975) (sufficient evidence was presented to establish a finding of alter ego); Plotkin v. National Lead Co., 87 Nev. 51, 482 P.2d 323 (1971) (evidence of non-assumption of corporate debt by individuals presented factual question to be decided by trial and summary judgment vacated); McCleary Cattle Co. v. Sewell, 73 Nev. 279, 317 P.2d 957 (1957) (alter ego doctrine allowed execution of debt against third-party corporation).

That Bonanza defaulted on its obligation is unfortunate from Appellant's point of view, but this does not represent an injustice carried out by Tracy. Lipshie was knowledgeable enough to request Wolf's personal signature on the promissory note, but that did not commit Tracy to an assumption of the indebtedness. Nor does there exist any evidence of bad faith on Tracy's part.

At Bar, Lipshie accepted the promissory note without objection or protest; he failed or otherwise neglected to request its redrafting to include Tracy as a joint obligor; he accepted a number of installments from Bonanza and successor owners or

obligors, exclusive of Tracy; he failed to join Tracy as a defendant until he obtained an empty judgment against Bonanza; and he has admitted that he did not know that Tracy might potentially be liable on the note or that Wolf may be the agent of Tracy until the post-default period.

Appellant has failed to show that Tracy used the nomenclature of another corporation, namely, Bonanza, as a facade to insulate itself from responsibility on the claimed indebtedness. We cannot say that these are uncommon business practices.

Lipshie raises another argument, purportedly independent of the alter ego contention, to the effect that Tracy was unjustly enriched so as to allow quasi-contractual recovery by Lipshie. We deem this argument to be embraced in our resolution of the alter ego question. Additionally, Bonanza was the maker of the promissory note, and Lipshie the payee. To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles.

The trial court was correct in granting summary judgment on these issues.

2. *Third Party Beneficiary:* Appellant next contends that the provisions of the October 28, 1968, agreement between Wolf and Tracy make him a third party beneficiary thereof. To obtain such a status, there must clearly appear a promissory intent to benefit the third party (Olson v. Iacometti, 91 Nev. 241, 533 P.2d 1360 (1975)), and ultimately it must be shown that the third party's reliance thereon is foreseeable (Lear v. Bishop, 86 Nev. 709, 476 P.2d 18 (1970)). Appellant cannot satisfy the third party beneficiary requirements.

It is not at all demonstrated that Appellant was to be a Tracy beneficiary of the October 28, 1968, agreement. A contract to pay a debt to a third person is presumed for his benefit unless it appears that the contract was not so intended. Quijada v. Southern Pipe and Casing, 78 Nev. 271, 371 P.2d 661 (1962); Hemphill v. Hanson, 77 Nev. 432, 366 P.2d 92 (1961); Concrete Steel Co. v. Illinois Surety Co., 157 N.W. 543 (Wis. 1916). Here, although Appellant was mentioned in the agreement and he would indeed receive a benefit, there was no promise, at least on the part of Tracy, to satisfy his indebtedness. The agreement between Tracy and Wolf provides only that the obligation of Bonanza to Lipshie for the amount of the

extraordinary loan would *survive* the bankruptcy proceedings. The matter of negotiations between Tracy and Wolf, the intent of the parties, and the tenor of the agreement make it plain that Tracy did not assume, or intend to assume, any obligation to Lipshie.

In Fruitvale Canning Co. v. Cotton, 252 P.2d 953, 955 (Cal.App. 1953), the Court stated:

> Before a third party who may derive a benefit of a promise is entitled to bring action thereon, there must be an intent clearly manifested by the promisor to secure the benefit claimed to the third party.

Here, there was no promise to benefit Lipshie. The fact that he might only have incidentally benefited by the performance of the agreement is insufficient. Olson v. Iacometti, 91 Nev. 241, 533 P.2d 1360 (1975).

It cannot then be said that Tracy had expressly or impliedly promissorily bound itself to retire the remaining debt to Appellant and that his reliance was reasonably foreseeable.

The trial court's granting of summary judgment on this theory was also proper.

3. *Tracy's liability as Principal:* In summary, Appellant contends that he relied upon certain representations of Wolf in releasing his creditor's claim against Bonanza and in assigning his Bonanza stock. Appellant further argues that the existence of the agency relationship, the representations that were purportedly made, together with the reliance thereon by him, are mixed questions of fact and law not properly resolved by the granting of summary judgment. Appellant founds this contention on provisions contained in the Tracy-Wolf agreement of October 28, 1968, at page one, paragraph e, and page three thereof as follows:

> e. It is the intent and desire of Tracy and Wolf hereby to enter into an agreement replacing the prior agreement with Shanbaum wherein Tracy will agree to purchase and Wolf will agree to sell and/or obtain for Tracy eighty-eight percent (88%) of the issued and outstanding stock of Bonanza.

and at page 3:

> . . . Tracy shall furnish Wolf with the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) to be used by Wolf by way of down payment outside of escrow to obtain the said assignment and release of loan

claims from the shareholders reflected in Exhibit D (other than Wolf). Wolf's ability to use said sum of $100,000.00 by way of down payment shall be subject to the general supervision of a representative of Tracy who shall provide the same or pro-rata portion thereof upon being satisfied that Wolf shall be able to obtain an appropriate portion of the required percentage of stock for the account of Tracy.

In Brunzell v. Woodbury, 85 Nev. 29, 449 P.2d 158 (1969), we indicated that unless the intention to bind the principal appears on the face of the instrument, extrinsic evidence cannot be admitted to bind the principal. Quoting from Van Haaren v. Whitmore, 38 P.2d 829 (Cal.App. 1934):

> [I]t must appear from the instrument itself that the true object and intent of it are to bind the principal and not the person who signed the note, before he can escape personal liability. . . . When the parties have deliberately put their agreement in writing, in such language as imports a legal consideration, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is there expressed. 85 Nev. at 33, 449 P.2d at 160.

The omission of Tracy's identity from Appellant's promissory note clearly demonstrates that Lipshie intended to look to Bonanza and Wolf for payment. Specific language is seen in the October 28, 1968, agreement that provides only for the *survival* of the obligation of Bonanza No. 2 to Lipshie, not its assumption by Tracy. Further, there is no legally admissible evidence in the present record which would support a finding that representations concerning Tracy's liability were in fact made by Wolf.

The reasonable interpretation of the agreement restricts the scope of Wolf's authority in terms of negotiations with Appellant and other Bonanza shareholders and creditors.

The question of whether Wolf did actually represent that Tracy would be liable as to the remaining $127,780.00 balance must be answered in the negative.

The summary judgment granted on this issue was also proper.

The summary judgments are affirmed.

BATJER, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.