ELIZABETH E., Appellant, v. ADT SECURITY SYSTEMS WEST, INC., Also Known as ADT, WEST, INC., Respondent.

No. 22508

October 22, 1992 839 P.2d 1308

*Elwin C. Leavitt,* Las Vegas, for Appellant.

*Pico & Mitchell,* Las Vegas, for Respondent.

890

## OPINION

*Per Curiam:*

Appellant Elizabeth E., an employee of Taco Bell, was the victim of a sexual assault during the process of closing and exiting her place of employment late at night. Elizabeth filed a complaint against the alarm company that serviced the restaurant, basically alleging negligence theories as a basis for her right of recovery. Respondent ADT, Security Systems, West, Inc. (ADT) filed a motion for summary judgment which was granted by the district court without a specification of reasons other than "the pleadings." Despite the lack of cogency presented on behalf of Elizabeth's cause of action either at the district court level or on appeal, we conclude that summary judgment was inappropriate.

## FACTS

At the date and time pertinent to this case, Elizabeth was employed at a Taco Bell restaurant in Las Vegas. She served as a night shift assistant manager and her duties included closing the restaurant and activating the burglar alarm system prior to leaving.

The alarm system installed at Taco Bell by a predecessor to ADT[1] provided "burglary service" that entailed monitoring of the premises after business hours. Prior to closing and exiting the building, Taco Bell employees were instructed to call the alarm service company (ADT at the time of the incident) to advise the company that the alarm was being engaged. Once activated, the system provided employees thirty seconds within which to exit the building. If the system was thereafter disengaged, an "unscheduled entry" was registered with ADT, prompting an

---

[1]The original parties to the contract for the alarm system were Crime Control, Inc. and Taco Bell. Crime Control, Inc. sold its business to Electro Protective Corp., which later changed its name to ADT Security Systems, Inc. The latter entity transferred its Nevada operations to its regional subsidiary, ADT, Security Systems, West, Inc.

immediate call to the premises by an ADT operator. In the absence of an answer, ADT would then telephone designated employees of Taco Bell.

Elizabeth stated in her deposition that she was trained by Taco Bell manager Karen Burke, who told her that the alarm system was equipped with a "panic" or "holdup" feature which would transmit a silent alarm to an ADT operator who would then immediately notify the police. Elizabeth indicated that Burke informed her that the silent alarm was activated by simultaneously pressing the number one and three buttons on the key pad. Unfortunately, the silent alarm instruction was in vain, as Taco Bell elected not to purchase that feature of the system until the month after Elizabeth's ordeal.

On October 22, 1989, Elizabeth and her daughter, who also worked for Taco Bell, were working the late shift. As they concluded their shift at approximately 1:20 a.m., Elizabeth called ADT to announce that they were leaving the building and engaging the alarm. Elizabeth's daughter started to leave through the rear door, with her mother close behind, when the daughter was accosted by a man with a gun and forced back inside the building. The intruder then instructed Elizabeth to disengage the alarm. In the process of deactivating the alarm, Elizabeth pressed the two buttons on the key pad that she obviously believed would transmit a silent alarm to ADT. The intruder then ordered the women to get down on the floor and told them he would kill them if the police arrived. The man next removed money from the safe and thereafter sent the daughter to the break room. Elizabeth was told to remove her pants and lie down by the back door. Apparently satisfied that the police would not be arriving at the scene, the intruder ripped the cord from the telephone and proceeded to sexually assault Elizabeth. After the assailant left, Elizabeth and her daughter ran to a market across the street and called the police.

The deposition of Melinda Chaffee, a lead operator for ADT at the time of the incident, revealed that ADT received the "unscheduled entry" signal resulting from the assailant forcing the two women back into the building. Chaffee stated that after receiving the signal, she called Taco Bell but there was no answer (Elizabeth stated by deposition that phone did not ring). She thereafter telephoned the store manager, Karen Burke, who requested that an ADT representative meet her at the restaurant. When the store manager arrived at the crime scene, the police had already been contacted by Elizabeth.

Elizabeth's action against ADT was essentially based upon allegations of negligence and deceptive trade practices. The district court granted summary judgment against Elizabeth and

declined to specify grounds for the decision other than "the pleadings."

## DISCUSSION

Summary judgment is properly entered only when there are no genuine issues of material fact, it is virtually clear what the truth is, and the moving party is entitled to judgment as a matter of law. NRCP 56(c); Short v. Hotel Riviera, Inc., 79 Nev. 94, 103, 378 P.2d 979, 984 (1963). Although summary judgment may not be used to deprive litigants of trials on the merits where material factual doubt exists, the availability of summary proceedings promotes judicial economy and reduces litigation expense associated with actions clearly lacking in merit. Therefore, it is readily understood why the party opposing summary judgment may not simply rest on the allegations of the pleadings. To the contrary, the non-moving party must, by competent evidence, produce specific facts that demonstrate the presence of a genuine issue for trial. Michaels v. Sudeck, 107 Nev. 332, 334, 810 P.2d 1212, 1213-1214 (1991).

With the above legal principles in mind, the record in the instant case leaves us with an element of doubt concerning the truth. In so stating, we do not fault the district court judge who was given precious little justification for declining to enter summary judgment. Indeed, it is far from clear on the record whether the district court's attention was even directed in any meaningful way to key aspects of depositions taken in the action. Appellant's counsel complains on appeal that he intended to again amend Elizabeth's complaint "as soon as the depositions were signed." Fortunately for Elizabeth, excerpts of depositions were included in the appendix to appellant's brief, and ADT voiced no objection to this court considering these materials on appeal. Nor did ADT object to appellant's appendix on grounds that its contents were not before the district court on summary judgment. In any event, we have elected to review the depositional testimony included in the appendices primarily because Elizabeth's counsel filed a document in the district court specifying the same depositions as attachments to Elizabeth's points and authorities in opposition to summary judgment. The designation of the record on appeal included all papers and documents filed in the district court.

It is uncontroverted that the alarm system purchased and installed at the location where Elizabeth worked at the time of the incident did not include a panic or holdup feature. The system was acquired to protect the premises from acts of burglary occurring after the store was closed. It was not until the month

following Elizabeth's ordeal that the panic or holdup feature was added to the system. It is thus clear on the record that ADT had been paid only to provide property protection rather than people protection at the time of the incident. However, that fact does not end the matter.

The depositional testimony of store manager Karen Burke indicated that she was informed by a representative of ADT, a mechanic or person who worked on the systems, that the alarm system installed at Elizabeth's place of employment included a panic or holdup feature. Burke further stated that the mechanic told her how to operate that aspect of the system, and that she in turn instructed Taco Bell assistant manager trainees, including Elizabeth, how to operate the panic buttons. Clearly, this testimony raises a material issue of fact unsuited to a summary resolution.

Despite the absence of record evidence upon which liability could be based for negligence connected with the alarm system as it related to the features actually purchased by Taco Bell, it is apparent that if a representative of ADT negligently misrepresented the existence of a panic feature that was not purchased or programmed into the Taco Bell alarm system, a basis for liability in tort has been asserted. Moreover, the basis for liability is strengthened where the ADT representative also instructed the store manager how to operate the panic function in anticipation of further instruction and reliance among Taco Bell employees.

Although the theory upon which we reverse the summary judgment is based upon a tort cause of action for negligent misrepresentation, the duty owed to Elizabeth by ADT is attributable to the contract between ADT and Taco Bell. As a result of the contract and the serious nature of the services provided by ADT under the contract, we have no difficulty recognizing ADT's duty of care to Taco Bell and its employees not to misrepresent the capabilities of the alarm system installed at the location where Elizabeth worked on the occasion of her injuries. *See generally,* 65 C.J.S. *Negligence* § 20 (1966) (special relationship arising from contract can serve as basis for liability for economic or physical injury resulting from reliance upon negligent misrepresentation).

ADT seeks to avoid a finding of duty running to Elizabeth by contending that Elizabeth was nothing more than an incidental beneficiary under the contract between ADT and Taco Bell and that as such, she had no right of action against ADT. We disagree. In Lipshie v. Tracy Inv. Co., 93 Nev. 370, 566 P.2d 819

(1977), we stated that in order to enjoy the status of a third-party beneficiary, "there must clearly appear a promissory intent to benefit the third party (Olson v. Iacometti, 91 Nev. 241, 533 P.2d 1360 (1975)), and ultimately it must be shown that the third party's reliance thereon is foreseeable (Lear v. Bishop, 86 Nev. 709, 476 P.2d 18 (1970))." *Id.* at 379, 566 P.2d at 824-825. In the instant case, drawing all inferences, as we must, in favor of Elizabeth, it reasonably may be inferred that when ADT represented that the panic feature was part of the Taco Bell alarm system, ADT had to know that the emergency feature would be used, if at all, by employees of Taco Bell. Moreover, the ADT representative must have known, and it was therefore foreseeable to ADT, that Taco Bell employees would rely on the availability and effectiveness of the panic function during times of emergency such as the one that faced Elizabeth. Clearly, the existence of such a feature would be intended to benefit the promisee's employees who would be using the system.[2]

But for the above depositional testimony of Burke and Elizabeth, who confirmed that Burke informed her of the panic feature of the system and how to operate it, we would have agreed with the determination of the district court. There is little doubt, however, that ADT had a duty not to misinform Taco Bell concerning the capabilities of the alarm system that existed on the premises. The duty not to misinform is especially clear where it is foreseeable that those to whom the misinformation is given may rely upon it to their extreme detriment.[3]

We perceive no validity to the other allegations of Elizabeth's complaint, and conclude that her specifications of fraud, deceptive trade practices and strict products liability are without merit. Moreover, we note with some degree of dismay that it has been

---

[2]Despite our analysis rejecting ADT's contention that Elizabeth would have been at most an incidental beneficiary under the contract between ADT and Taco Bell, we need not decide whether Taco Bell employees were third-party beneficiaries under the contract. Because corporations function through their officers, directors, and employees, it may be argued that Taco Bell employees such as Elizabeth were, in legal contemplation, promisees under the contract, at least to the extent necessary for recognizing a special relationship between the injured employee and the responsible contracting party. In any event, where, as here, the misrepresented service (the panic or holdup feature) would have necessarily been used by, and of greatest potential benefit to, the Taco Bell employees, it would be unreasonable to conclude that no special relationship existed between ADT and Elizabeth.

[3]Of course, this is an appeal from summary judgment, and at trial Elizabeth will have to prove that a misrepresentation by an employee or agent of ADT occurred, and that the negligent misrepresentation was the proximate cause of her injuries. It should be apparent from our opinion that absent the misrepresentation, there would be no duty running from ADT to Elizabeth.

necessary to view Elizabeth's amended complaint with substantial latitude in order to devine a cause of action based upon negligent misrepresentation. We nevertheless conclude that Elizabeth should have the opportunity to seek redress for her injuries based upon a composite of allegations in the amended complaint that are barely adequate to state a cause of action.

For the reasons discussed above, we reverse the summary judgment entered below and remand for a trial on the merits.